IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JANE DOE "A,"                       )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )   CASE NO.: 3:17-cv-679-GMB
                                    )   [WO]
D&J ENTERPRISES, d/b/a D&J          )
Ranch, *et al.*,                    )
                                    )
    Defendants.                     )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Jane Doe "A" ("Doe") filed this lawsuit on October 10, 2017, alleging several state and federal claims arising out of her employment on a cattle ranch in Lee County, Alabama. Doc. 1. Now before the court are motions to dismiss filed by Defendants D&J Enterprises, d/b/a DCJ Ranch ("D&J") and Richard D. Starr (Doc. 22), and by James L. Starr (Doc. 28). The remaining defendant, Andrew Calvin Whatley, filed an answer to the complaint. Doc. 11. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Docs. 38–40.

After careful consideration of the parties' submissions and the applicable law, it is ORDERED that the motions to dismiss (Docs. 22 & 28) are GRANTED in part and DENIED in part, and that the plaintiff's federal claims against all defendants are DISMISSED with prejudice. The court declines to exercise supplemental jurisdiction over the plaintiff's state-law claims for the reasons stated below. Accordingly, it is further

ORDERED that the plaintiff's state-law claims against all defendants are DISMISSED without prejudice.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following is a recitation of the facts alleged in the complaint. Doe is a 21-year-old resident of Lee County, Alabama, who began working at D&J Ranch in Beauregard, Alabama, in 2012, when she was 15 years old. Doc. 1 at 2–7. D&J is a cattle and horse ranch owned by D&J Enterprises, Richard Starr, James Starr, and Andrew Calvin Whatley. Doc. 1 at 2–3. Whatley became familiar with Doe and her family through church, and learned that Doe was an avid horseback rider interested in working on a ranch. Doc. 1 at 5–7. Over time, Whatley cultivated a relationship with Doe and her family, taking them out to lunch and inviting Doe to his ranch several times in late 2011. Doc. 1 at 6–7. Early in 2012, Whatley hired Doe to work at D&J on Saturdays, and eventually Doe worked at the ranch on Tuesday, Thursday, and Saturday of every week. Doc. 1 at 7–8. After working at D&J for roughly one year, Whatley began to make suggestive comments to Doe, referring to her as "sexy" and stating, "I wish I'd met you 20 years ago." Doc. 1 at 8. He would also make physical contact with Doe, pretending that it was accidental. Doc. 1 at 8.

In May or June 2013, Whatley hired Doe as the full-time horse manager at D&J. Doc. 1 at 8. Doe often worked 12 to 14 hours per day and was typically alone with Whatley

2

on the ranch. Doc. 1 at 9. Gradually, Whatley's unwanted advances toward Doe increased, as he questioned her about her sexual history and interest in boys her age. Doc. 1 at 9. He began to touch Doe's rear end despite Doe's commands to stop, again pretending that his contact was unintentional. Doc. 1 at 8–9. On February 14, 2013, Whatley invited Doe into his home and tried to kiss her. Doc. 1 at 10. After Doe pushed him away, Whatley forcibly grabbed her face and pulled it toward his. Doc. 1 at 10. Doe began to fight back—pushing, screaming, kicking, and clawing in an attempt to stop him—but Whatley persisted. Doc. 1 at 10. At this point, Whatley forced Doe into a bedroom and raped her as she continued to resist. Doc. 1 at 10. Afterward, Whatley threatened Doe and stated "for your own good, you don't need to say anything [about the sexual assault] to anyone." Doc. 1 at 11. Traumatized from the assault, Doe did not mention it and was unable to eat or sleep. Doc. 1 at 11. However, Whatley's sexual abuse continued. In March, he told Doe that he knew that sexually assaulting her was wrong, but that he "liked it too much." Doc. 1 at 11. He removed her shirt and touched her breasts despite Doe stating, "I don't want to do this. Please stop. Leave me alone." Doc. 1 at 11.

At this point, Whatley began to ingratiate himself with Doe's family in an attempt to conceal his abuse and cast doubt on any future allegations by Doe. Doc. 1 at 11. He would ask Doe's mother to pick up his five-year-old daughter from school and babysit her in the afternoon while his wife was at work. Doc. 1 at 11. He insisted on picking up his daughter from the Doe family's home—despite the fact that his wife passed the house on her way home from work—"to evaluate whether [Doe's] parents had become aware of his assaulting abuse towards her." Doc. 1 at 12. Whatley also asked Doe's mother to care for

3

his own mother for two days after she suffered a stroke. Doc. 1 at 12.

While seeking to earn the trust and admiration of Doe's family, Whatley began to abuse Doe emotionally so as to undermine her "confidence and self-worth to discourage her from reporting his harassment and abuse." Doc. 1 at 12. Whatley insulted her, calling her "fat" and "stupid," and telling her that she was "nothing without" him and that he "made" her. Doc. 1 at 12. Whatley sought to gain control over Doe and to intimidate her to prevent her from reporting his abuse. Doc. 1 at 12. He also told Doe that her parents would not protect her, that they were cheating on each other and getting a divorce, that she could not trust them, and that her mother "hated" her. Doc. 1 at 13. While most of Whatley's abuse occurred when he was alone with Doe, Richard Starr observed him brushing up against Doe and insulting her weight. Doc. 1 at 13. During this time period, Whatley repeatedly raped Doe at the ranch for approximately one year. Doc. 1 at 13. If Doe physically resisted, Whatley would become increasingly violent—punching, grabbing, and kicking Doe and pulling her hair. Doc. 1 at 14. Whatley instructed Doe to explain to her parents that her bruises were from injuries suffered on the job. Doc. 1 at 14. In November 2013, Whatley brutally assaulted Doe—beating her in the face until she lost consciousness—because he instructed her to shoot a coyote on the ranch and she missed. Doc. 1 at 14. Whatley told Doe that she should kill herself if she became pregnant or contracted a sexually transmitted disease from him. Doc. 1 at 16.

In April 2014, Whatley gave Doe a handgun as a gift. Doc. 1 at 15. He then asked Doe to go with him to a remote part of the ranch, loaded the gun, placed it in Doe's hand pointed the gun toward his head, and stated, "[I]f it's so bad, just end it." Doc. 1 at 15. Doe

began to cry, prompting Whatley to laugh. Doc. 1 at 15. The handgun was not the only gift Whatley gave to Doe in an attempt to keep her from reporting his abuse, as he gifted her a number of job-related tools and often bought her lunch. Doc. 1 at 15.

As a result of Whatley's campaign of physical and psychological abuse, Doe was traumatized and repressed the memories of Whatley's acts. Doc. 1 at 16. However, in May 2014, Doe suffered a concussion when she was thrown off of a horse. Doc. 1 at 16. She was diagnosed with post-concussion syndrome by a pediatric concussion specialist and instructed to rest, refrain from work, and avoid using electronic devices. Doc. 1 at 16. In July, while she was still recovering, Doe began to experience partial recall of Whatley's abusive acts. Doc. 1 at 16. This caused panic attacks and insomnia. Doc. 1 at 16. However, Whatley stayed close by, often visiting Doe uninvited to ask her when she could return to work and monitor if she had disclosed his abuse. Doc. 1 at 16. Once she was fully recovered, Doe returned to work at D&J on a part-time basis, but Whatley greatly restricted her autonomy on the job. Doc. 1 at 17. Eventually, in August 2014, Doe disclosed Whatley's abuse to her mother, sought mental health counseling, and resigned from her employment at D&J. Doc. 1 at 17. After telling Doe that she would never be able to work on a ranch again, Whatley forcibly hugged her, asking if they could still be "friends." Doc. 1 at 17. Doe did not respond, left the ranch, and only returned with her parents to collect her belongings. Doc. 1 at 17.

On August 11, 2014, Doe filed a report concerning Whatley's abuse with the Lee County Sheriff's Department. Doc. 1 at 17. Whatley was later charged with first-degree rape. Doc. 1 at 17. It was eventually revealed that Whatley had sexually harassed and

5

abused other female employees in the past, which Richard Starr knew about but made no effort to prevent. Doc. 1 at 18. Even after Doe quit her job and pressed charges, Whatley and Richard Starr engaged in "menacing" behavior toward Doe and her family, repeatedly driving by their home and following Doe on rural roads. Doc. 1 at 20. Doe reported this behavior to the police. Doc. 1 at 21.

As a result of the years' worth of sexual, physical, and psychological abuse, Doe has suffered from anxiety, depression, panic attacks, weight gain, nightmares, crying spells, insomnia, and has sought medical and mental health treatment. Doc. 1 at 21. She has also lost wages and experienced different terms and conditions of employment at D&J. Doc. 1 at 21. As a result, Doe filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 14, 2015. Doc. 1-1. After receiving a Dismissal and Notice of Rights—commonly known as a right-to-sue letter—from the EEOC on July 10, 2017, Doe brought suit in this court on October 10, 2017. Doe brought claims against D&J under Title VII of the Civil Rights Act of 1964 for sexual harassment, gender discrimination, and retaliation.[1] Doc. 1 at 22–24. She also brought state-law claims for assault and battery and civil conspiracy against Whatley, Richard Starr, and D&J; and

---

[1] The text of Doe's retaliation claim mentions D&J, Whatley, and Richard Starr, but elsewhere the complaint indicates that the Title VII claims are brought against only D&J, Doe's employer. *See* Doc. 1 at 4 & 25. In her response to the amended motion to dismiss, Doe clarified that she intended to state the retaliation count against D&J and "Whatley and Richard Starr as agents of D&J, *i.e.*, owners of D&J and the *alter egos* of D&J." Doc. 26 at 3. "[T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). Doe's Title VII retaliation claim does both—it names Whatley and Richard Starr as agents of D&J, and it names D&J directly. Either way, D&J is the proper defendant. *See id.* ("The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act.").

negligent and wanton hiring, training, supervision, and retention against D&J. Doc. 1 at 28–29.

### III.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV.  DISCUSSION

**A.  Federal Claims**

Doe does not challenge the contention that her Title VII claims are filed out of time, but instead asserts that the doctrine of equitable tolling salvages her claims.[2] "The timely-filing requirements of Title VII of the Civil Rights Act . . . are non-jurisdictional and subject to equitable tolling." *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), and *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999)). Equitable tolling applies

---

[2] Title VII provides that a charge of discrimination "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)). Doe filed her charge of discrimination on October 11, 2015—14 months after she terminated her employment in August 2014.

when a plaintiff can show "extraordinary circumstances that are both beyond her control and unavoidable even with diligence." *Id.* (internal quotation marks omitted). "Mental incompetence can be an extraordinary circumstance that warrants equitable tolling if a plaintiff establishes a causal connection between [her] alleged mental incapacity and [her] ability to file a timely petition." *Id.* (internal quotation marks omitted). The plaintiff bears the burden of demonstrating that equitable tolling should apply. *Id.*

Doe alleges that Whatley raped, sexually assaulted, verbally abused, and threatened her on multiple occasions from February 2013 until she left D&J and reported Whatley to police in August 2014. Doc. 1 at 10–17. She claims that the psychological trauma caused her to "temporarily suppress" the memories of Whatley's abuse until she suffered a concussion and was diagnosed with post-concussion syndrome in 2014. Doc. 1 at 16. Doe alleges that, as she recovered, she began to recall Whatley's abuse and suffered from panic attacks and insomnia as a result. Doc. 1 at 16. Despite the fact that Whatley was criminally charged, he and Richard Starr continued to harass Doe until (and after) she filed a charge of discrimination with the EEOC on October 14, 2015. Doc. 26 at 10–11.

The circumstances Doe has alleged are extraordinary and beyond her control, even with diligence. She alleges that Whatley's acts not only caused her legal injury, but also resulted in emotional trauma so significant that she involuntary repressed her memory of these experiences. But, as Doe essentially concedes in her brief, her tolling argument is undercut by the admission that her memory of Whatley's abuse returned in the summer of 2014, *see* Doc. 1 at 16–17, more than one year before she filed her EEOC charge on October 14, 2015. Thus, Doe's own factual allegations belie the contention that her mental

8

incompetence caused the untimeliness of her EEOC charge. *See, e.g.*, *Lawrence v. Florida*, 421 F.3d 1221, 1226–27 (11th Cir. 2005) (concluding that equitable tolling did not apply where the plaintiff could not "establish a causal connection between his alleged mental incapacity and his ability to file a timely petition").

As a result, Doe argues that the statute of limitations should be tolled by her "disability of minority" even if her memory was restored more than 180 days before she filed her charge. Doc. 26 at 13. But there is no provision in Title VII that tolls the statute of limitations for minor plaintiffs. *See, e.g.*, *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971–72 (11th Cir. 2016) (establishing the general test for equitable tolling and listing justifications courts in other circuits apply for claims of equitable tolling, which do not include minority); *Ashton ex rel. Ashton v. Okosun*, 266 F. Supp. 2d 399, 403–04 (D. Md. 2003) (holding that "without a specific statutory provision exempting minors from the statute of limitations, the Court has no authority to toll the statue based on a party's infancy," and gathering cases to that effect). Doe offers no authority within the Eleventh Circuit holding that Title VII's statute of limitations may be tolled for a plaintiff who is a minor, and the court is aware of no decision on point. The court's analysis necessarily ends there, as it is Doe's burden to demonstrate that the statute of limitations should be tolled, and "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Assuming the veracity of Doe's allegations, the court's sympathy is hardly vague—it is visceral. But "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage

the prompt processing of all charges of employment discrimination." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting *Mohasco Corp. v. Silver*, 477 U.S. 807, 826 (1980)). Despite the gravity of Doe's allegations, the court is not permitted to read tolling provisions into Title VII which do not exist.

Finally, Doe argues that even if her sexual harassment and gender discrimination claims under Title VII are untimely, her retaliation claim is timely because she complains of menacing treatment by Whatley and Richard Starr that continued until February 2016. *See* Doc. 26 at 5 & 16. Even accepting the truth of Doe's allegations, these acts cannot constitute adverse employment actions because they occurred well after Doe's employment with D&J had ended. *See, e.g.*, *Wexler v. Kennesaw Prediactrics, P.C.*, 2017 WL 3034734, at *15 n.9 (N.D. Ga. May 2, 2017) (explaining that any action occurring after the plaintiff's employment ended "necessarily was not an adverse employment action"). While these allegations may give rise to state-law tort claims, they cannot serve as an actionable basis for a Title VII retaliation claim, and they do not transform an untimely Title VII claim into a timely one.

**B.     State-Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over Doe's state-law claims for negligent and wanton hiring, training, supervision, and retention against D&J; assault and battery against Whatley, Richard Starr, and D&J; and civil conspiracy against Whatley, Richard Starr, and James Starr because Doe's claims arising under federal law will be dismissed. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over a claim

if "the district court has dismissed all claims over which it has original jurisdiction"). In fact, where all federal claims are dismissed prior to trial, district courts are encouraged to dismiss any remaining state-law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). In deciding to dismiss the remaining state-law claims, the court has considered the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

"Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540. Indeed, the Supreme Court has declared that "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Consistent with this rationale, this court is reluctant to undertake a gratuitous adjudication of Doe's state-law claims. And there is nothing before the court to suggest that the remaining factors—convenience and fairness—weigh in favor of retaining subject-matter jurisdiction. Moreover, the court can discern no possibility of significant

prejudice to any party, particularly in light of 28 U.S.C. § 1367(d)'s provision tolling the statute of limitations for any state-law claims that were timely at the time Doe filed this action. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."). Accordingly, the court declines to exercise supplemental jurisdiction over Doe's state-law claims pursuant to § 1367(c)(3).

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that the motions to dismiss (Docs. 22 & 28) are GRANTED in part and DENIED in part, and that all federal claims asserted by the plaintiff against all defendants are DISMISSED with prejudice. It is further ORDERED that the plaintiff's state-law claims against all defendants are DISMISSED without prejudice.

DONE this 16th day of February, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE